**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUGUSTINE PENA, III, | Case No. 12-cv-01233-AWI |
| Appellant, | ORDER AFFIRMING BANKRUPTCY COURT'S ORDER CONVERTING CASE TO CHAPTER 7 |
| v. | |
| TRUDI MANFREDO, CHAPTER 7 TRUSTEE, | |
| Appellee. | |

Appellant Augustine Pena, III ("Pena" or "Appellant") appeals the Bankruptcy Court's order converting his bankruptcy case from Chapter 11 to Chapter 7. The Appellee is Trudi Manfredo, Chapter 7 Trustee ("Appellee"). For the reasons that follow, the Court AFFIRMS the Bankruptcy Court's Order.

## FACTS

At the time of the Petition filing, Pena was in the business of property management. He owned 17 residential properties and 12 parcels of property in Kings, Tulare, Orange, and Los Angeles Counties. AER 382-85. Some were vacant and some were "deemed nuisances," requiring repair. AER 145.

On April 9, 2012, Pena filed a petition for relief under Chapter 11 of the bankruptcy code. AER 1. By order of April 11, 2012, the Meeting of Creditors was scheduled for six weeks later, on May 21, 2012. AER 59. A status conference was scheduled for June 6, 2012. AER 61. In the order setting this status conference, the bankruptcy court directed Pena's counsel to "be prepared to

advise the Court concerning ... the status of" any "motions for use of cash collateral," and further gave notice that "the Court may, *sua sponte*, at the status conference, order the case dismissed or converted to Chapter 7 …" *Id.*

In April and again in May 2012, Pena collected rents from the occupied properties in the amount of $48,000-50,000. Most of these properties were encumbered by deeds of trust that contained assignment of rent clauses. As Appellee maintains in this appeal, this rental income therefore represented cash collateral for those properties, such that Pena should not have spent any of this money absent a court order or creditor consent. Instead, Pena spent approximately $16,000 of these rents. It was not until May 21—the date of the meeting of creditors, six weeks after the Chapter 11 filing, and after he had made these expenditures—that Pena (through attorney J.M. Irigoyen) filed an emergency motion to allow him to spend this rental income, prospectively. AER 107-127.

The emergency motion came on for hearing two days later, on May 23, 2012. AER 132-172. At the hearing, Irigoyen initially told the bankruptcy court that Pena was seeking permission to prospectively spend funds that he had been properly segregating into "debtor-in-possession" (DIP) accounts. AER 134-135. Only after questioning by the judge did Irigoyen acknowledge that Pena had already spent $16,000 of post-filing rental income, approximately the amount requested in his motion. AER 140-141. Irigoyen explained that this expenditure occurred "before we made it very clear to him in a meeting at my office that that money does not belong to him, that is not for him to spend." AER 140. Irigoyen blamed himself for this delay. He said he had initially misread the deeds as not containing the relevant "assignment of rent" language. It was not until the May 21 meeting of creditors, two days prior to this hearing, that he had looked more closely. AER 142.

The creditors opposed Pena's motion, both because the money had already been spent and also because Pena had failed to account for rental income and expenses as to each individual property. AER 150. On this point, Irigoyen acknowledged that Pena had been told at the initial debtor's interview to account for the properties individually. However, he said that Pena had already complied with this requirement: he had "prepared a schedule that shows for each property what the expenses have been," and could provide this in the future. AER 151-153. Counsel for

several creditors indicated a willingness to "work with debtor's counsel" to free up some cash collateral in the meantime, "if he can get on the phone with me today or tomorrow," adding that "if there's an inability to accomplish that which we want to, it's going to be because the data isn't broken down per property." AER 163-164.

Concluding the May 23, 2012 hearing, the bankruptcy judge denied Pena's motion without prejudice. He cited the failure to account for each property separately, inaccuracies in the accounting (e.g., inclusion of personal expenses), the inadequacy of the proposed protections in light of inexplicably high overhead costs, and the unexplained use of cash collateral. Irigoyen informed the judge that Pena believed he could make a proposed budget, without Irigoyen's assistance, within a week. Based on this representation the Court ordered Pena to produce an updated budget no later than May 30, 2012, and set the next status conference in two weeks, on June 6, 2012. Finally, the judge asked Pena to give "some very, very serious and specific thought to the conversation we're going to have on June 6th." He said:

> I am not happy with the use of cash collateral and may well be talking about appointment of a trustee or a conversion in this case … I am very disturbed by the idea that there has been a delay of forty-five days or so to seek this, and an expenditure of something like sixteen thousand dollars cash collateral, and the accounting that is in front of me today doesn't tell me where it goes, and I'm not sure it's on the right track. So I am giving serious thought to whether or not this case should remain as a Chapter 11. … [A]ssuming your client wants to remain in Chapter 11, you should give me as many good reasons as you can that I shouldn't go that direction because I am very troubled here …

Pena did not provide his budgets by the May 30, 2012 deadline. He terminated Irigoyen, claiming that he felt that Irigoyen had failed to advise him against spending his cash collateral. On May 30, 2012, he retained Vincent Gorski, providing him with budget paperwork the following day. AER 173-186. On June 1, 2012, Gorski sought a one-week continuance and a substitution of attorney. *Id*. No continuance was granted. Gorski filed the budgets on June 6, 2012, the same day as the status conference.

At the June 6, 2012, status conference, both Irigoyen and Gorski appeared. Although Irigoyen was still technically Pena's attorney, the court gave both attorneys an opportunity to speak. The judge started with the issue that was "front and center," namely, "that the debtor has used sixteen thousand dollars of cash collateral with neither a stipulation nor an order" and did not move

for permission to do so until 42 days into the case. AER 365. The judge indicated that, "absent a compelling argument, I intend to convert to [chapter 7] because I am, frankly, very disturbed by this." *Id.* The judge stated that he did not believe that Irigoyen was in fact responsible for Pena's actions. AER 367. Gorski then stated that he "recognize[d] the Court has not had an opportunity to look at the proposed budget," and proceeded to summarize "what the budget does show." AER 369. He explained, "When you look at this, there is positive cash flow. This is a Chapter 11 that can survive, it is viable, assuming that we are able to value the collateral." *Id*. He then asked the Court to continue the status conference to allow the Court and the creditors an opportunity to see this. AER 370. Counsel for creditors reiterated the Court's concerns and added that, contrary to the expectation at the previous hearing, neither of Pena's attorneys had contacted their offices to provide an accounting. AER 371; *see* AER 163, 170, 171.

The bankruptcy court ordered the case converted to Chapter 7. On June 12, 2012, the bankruptcy court filed the minute order to the same effect. AER 478. Following appointment on June 13, 2012, Trudi Manfredo became trustee of Pena's estate. AER 374.

On June 14, 2012, Pena moved for reconsideration. AER 379-428. On June 21, 2012, the bankruptcy court issued a written order denying this motion, finding neither "clear error" nor "manifest injustice." AER 467-76. On June 23, 2012, Pena filed his notice of appeal to the Ninth Circuit Bankruptcy Appellate Panel (BAP). AER 442-443. On July 9, 2012, creditor East West Bank elected to transfer Pena's appeal from the BAP to this Court, pursuant to 28 U.S.C. § l58(c)(l)(B) and Federal Rule of Bankruptcy Procedure ("FRBP") 8001 (e)-1.

In late July 2012, the case was opened in this Court. Doc. 1. Approximately six months later, on February 1, 2013, this Court issued a minute order placing the appeal on the March 4, 2013 calendar for dismissal for lack of prosecution. The Court then granted Pena's motion for additional time, giving him until March 21, 2013, to file his brief. Despite this extension, Pena filed his brief one day late, on March 22, 2013. According to Appellee, Pena apparently served his brief and excerpts of record upon Appellee directly, but not upon Appellee's counsel or upon the counsel for any of the creditors.

4

**STANDARD OF REVIEW**

On appeal, a bankruptcy court's findings of fact, whether based upon oral or documentary evidence, shall not be set aside unless clearly erroneous. FRBP 8013. The factual findings supporting the bankruptcy court's decision are reviewed for clear error. *In re Filtercorp. Inc.*, 163 F.3d 570, 576 (9th Cir. 1998); *In Re Ewell*, 958 F.2d 276, 279 (9th Cir. 1992); *In Re Probasco*, 839 F.2d 1352, 1353-1354 (9th Cir. 1988). Conclusions of law are reviewed *de novo* on appeal. *In Re Comer*, 823 F.2d 737, 739 (9th Cir. 1984).

**ANALYSIS**

**A.      The Bankruptcy Court Properly Resolved the Cash Collateral Issue**

A debtor-in-possession in Chapter 11 may not use cash collateral without permission from either the interested party or the court after notice and a hearing. 11 U.S.C. §363(c)(2)(A)&(B); 11 U.S.C. § 1107. It is undisputed that Appellant collected between $48,000-50,000 in rents from his 29 properties, and it is undisputed that he spent approximately $16,000 of this amount without permission. Appellant now nevertheless argues that these rents were not "cash collateral."

Appellant suggests that Appellee did not meet its burden of proof as to the "validity, priority, or extent" of the security interests. 11 U.S.C. § 363(p). However, the bankruptcy court heard sufficient evidence to satisfy this burden. Although the deeds were never entered as exhibits, Appellant himself, in moving for permission to spend cash collateral, informed the court of the existence of the assignment of rent clauses in the deeds, never questioning their validity. *See, e.g.,* AER 136. On this basis, the Court cannot find clear error in the bankruptcy court's finding these interests to be valid.

Now on appeal, and for the first time, Appellant points to language in the deeds which, he argues, shows that no assignment in fact occurred. Without offering any deed as an exhibit, he informs the Court that the assignment of rent clauses require that the "Borrower shall receive the Rents" until the lender has given appropriate notice to the borrower and to the tenants. Citing *Fed. Nat'l Mortgage Assn. v. Bugna*, 57 Cal. App. 4th 529 (1997), Appellant implies that this right of Appellant to "receive the rents" is synonymous with a security interest in the rents.

5

*Fed. Nat'l Mortgage Assn.* does not stand for this proposition. Although it deals with a similarly worded deed of trust, the issue in that case was not the validity of the security interest. Rather, there was no question that the lender had perfected his security interest in the rents, and the issue was whether the lender could *collect* the rents. Deed language on "receipt of rents" was relevant to this decision. Here, however, the lenders have not sought to collect rents. They simply argue that Appellant should not have spent the rents.

Appellant also cites California Civil Code § 2938(c), but this provision—which creates certain conditions before a lender becomes "entitled to collect and receive" rents—is equally inapplicable. Appellant refers to these conditions, then concludes without explanation: "Thus until then the rents belong to the borrower to use as he pleases." Again, Appellant is addressing the wrong the legal question. The issue is whether the creditors have an existing security interest in the rents, not whether they can collect the rents.

To that question, the law is clear that the creditors do have a valid security interest arising from the assignment of rents clauses. *See* California Civil Code § 2938(a) (creation of security interests in assignment of rents); 11 U.S.C. § 552(b)(2) (honoring such security interests); 11 U.S.C. § 363(a) (defining "cash collateral" to include such security interests). In *Fed. Nat'l Mortgage Assn.*, the court found that California Civil Code § 2938 created valid security interests in deeds of trust similar to those in this case. Because the creditors have a valid security interest, and because 11 U.S.C. § 363(a) defines cash collateral to include this interest, Appellant was subject to the cash collateral rules in 11 U.S.C. §363(c)(2). He could not spend the rental income without prior permission.

**B.      The Bankruptcy Court Properly Found That Conversion Was Appropriate, and Gave Proper Notice and Opportunity to Respond**

Bankruptcy courts have authority to dismiss a Chapter 11 case or convert it to Chapter 7. 11 U.S.C. § 1112(b). The statute speaks clearly on this point:

> [A]fter notice and a hearing, the court *shall convert* a *case* under *this chapter* to a *case* under *chapter* 7 or *dismiss* a *case* under *this chapter*, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1) (emphasis added). "Cause" includes the unauthorized and substantially harmful use of cash collateral. 11 U.S.C. § 1112(b)(4)(D); *In re Madawaska Hardscape Products, Inc.*, 476 B.R. 200, 214 (Bankr. D.S.C. 2012) ("The use of cash collateral without court authorization or the creditor's consent can have harsh consequences, including the dismissal of the case or the granting of relief from the automatic stay."). Here, the bankruptcy court stated explicitly in its reconsideration order that Appellant's unauthorized expenditure of $16,000 during a span of 42 days caused substantial harm to at least one creditor. (*See infra*, Appellant's Argument (d)).

There are exceptions to the bankruptcy court's authority to convert cases, but they do not apply here. Under the exception provided in 11 U.S.C. § 1112(b)(2), one of the requirements is that a party must establish that the debtor had "reasonable justification" in any act or omission that formed the grounds for the conversion.[1] In its initial decision, the court considered and explicitly rejected this possibility, finding that Appellant's counsel could not shoulder the blame for Appellant's expenditure of roughly $16,000 of cash collateral over six weeks. On reconsideration, the court also found as a legal matter that inadequate legal advice is no defense to a § 1112(b) dismissal or conversion. As the court noted, mistaken legal advice generally does not relieve a client of the consequences of acts or omissions. *See Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (dismissal of adversary proceeding for failure to appear at scheduled status conference); *Cannon-Stokes v. Potter*, 453 F.3d 446, 449 (7th Cir. 2006) (failure to schedule employment cause of action in bankruptcy schedules resulting in judicial estoppel barring claims); *In re DePugh,* 409 B.R. 84, 107 n.13 (Bankr. S.D. Tex. 2009) (failure to attach assignments to Proofs of Claim). Accordingly, any failure by counsel to raise the cash collateral issue would not excuse the debtor or mitigate the existing cause for converting the case.

---

[1] 11 U.S.C. § 1112(b)(2) provides:

**(2)** The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—

    **(A)** there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121 (e) and 1129 (e) of this title, or if such sections do not apply, within a reasonable period of time; and

    **(B)** the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)—

        **(i)** for which there exists a reasonable justification for the act or omission; and

        **(ii)** that will be cured within a reasonable period of time fixed by the court.

Appellant also cannot claim that he lacked notice or an opportunity to respond. The court first notified him on April 12 of his responsibility to file any motions for use of cash collateral. AER 61. Six weeks later, at the May 23, 2012 hearing on Appellant's cash collateral motion, the bankruptcy judge stated that he was "very troubled" by the expenditure of cash collateral, partly in light of the inadequate accounting. Appellant then informed the bankruptcy court that he would be able to provide an amended budget within a week, without Irigoyen's assistance, because he had already created such a budget of expenses. AER 152-53, 162, 166. Relying on this representation, the court ordered Appellant to provide a budget within one week. Creditors, also relying upon the representation that they would receive a more detailed budget, invited Appellant to contact them to discuss allowing Appellant to use some cash collateral for his business.

Appellant did not follow through on any of his representations. Having represented that he had already prepared his budget and could complete it without his attorney's help, he had not even begun to do so by June 1, 2012, the day after his one-week deadline. He requested an extension—which was not granted—and, through his proposed counsel Gorski, submitted this budget to the court on the day of the June 6, 2012 status conference.

Also at the May 23, 2012 hearing, Appellant had been put on notice that, at the status conference in two weeks, he should give the judge "as many good reasons as you can" why the case should not be converted. Then, at the June 6, 2012, status conference, the court rejected the argument that counsel, not Appellant, was responsible for the expenditure of cash collateral. It also considered Appellant's failure to meet the commitments made at the previous hearing. While it did not review the written report that had been submitted that morning, it did hear a summary from Gorski, Appellant's proposed counsel, of "what the budget does show": namely, that there is positive cashflow. (The bankruptcy court ultimately did consider these budgets upon reconsideration, and directly rejected the argument that Appellant could adequately protect creditors' interests. AER 473.)

In light of the above, the bankruptcy court provided Appellant sufficient notice and an opportunity to present his case.

**C.     No Exception to Conversion Under 11 U.S.C. § 1112(b)(2) Applies Here**

Appellant argues that "unusual circumstances" existed which merited an exception to conversion, pursuant to 11 U.S.C. § 1112(b)(2). As stated above, this exception also requires that (*inter alia*) a party establishes that the debtor had "reasonable justification" in any act or omission that formed the grounds for the conversion. 11 U.S.C. § 1112(b)(2). The court considered and explicitly rejected this possibility, finding that Appellant's counsel could not shoulder the blame for Appellant's expenditure of roughly $16,000 of cash collateral over six weeks. No "reasonable justification" was shown.

**D.     The Court Did Not Err in Finding Conversion Appropriate**

As set forth above, absent certain exceptions the court "shall convert a case ... for cause." 11 U.S.C. § 1112(b)(1). Cause may include the "unauthorized use of cash collateral substantially harmful to 1 or more creditors." 11 U.S.C. § 1112(b)(4)(D); *see In re Visicon Shareholders Trust*, 478 B.R. 292, 314 (Bankr. S.D. Ohio 2012) (noting little caselaw defining "substantially harmful" use of cash collateral, and citing dictionary definition of substantial as "considerable in importance, value, degree, amount, or extent"). In its written reconsideration order, the bankruptcy court found cause under this provision.

Appellant argues that this finding represented clear error. This court disagrees. The bankruptcy court found that Appellant, "without leave of court or consent of the implicated creditor," "used cash collateral of $16,000 during a span of 42 days." The court explained that "[t]his is precisely the type of activity that § 1112(b) is designed to address." The court found substantial harm to at least one creditor. Although some of the $16,000 went to business overhead and secured debt payment, "there was apparently no effort to use rent collected from a particular property to pay the deed of trust encumbering that property." Second, the funds had not been segregated, and Appellant had not provided "an accounting of the precise expenditures of these funds." Third, the court noted that "as of June 20, 2012, only two of the required 29 debtor in possession accounts" had actually been opened. This Court cannot find clear error in these findings.

Appellant's analysis of cases cited in the reconsideration order is not persuasive. The bankruptcy court cited these cases not to illustrate the limits of good cause, but to illustrate that it

could convert the case *sua sponte*. To the extent that Appellant argues that the bankruptcy court went too far in doing so, his authorities are not persuasive. 11 U.S.C. 105(a) applies straightforwardly here:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, *sua sponte*, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**E.     Notwithstanding Appellant's Public Policy Arguments and "Likelihood of Success," the Bankruptcy Court Did Not Abuse Its Discretion**

As stated above, the bankruptcy court properly found substantial harm to at least one creditor. On reconsideration, the court also considered Appellant's budgets and his argument that there would be a surplus of $10,000. The Court rejected this argument on the grounds that Appellant's counsel had previously stated that Appellant "could only afford to pay adequate protection payments of 65% of the face value of the first deeds of trust and no payments on second deeds of trust, after paying operating expenses, leaving $5,000, apparently for personal living expenses." AER 473. On this basis, the bankruptcy court did not abuse its discretion in finding that Appellant did not have a likelihood of success. Appellant's public policy arguments are equally unfounded.

**F.     Failure to Meet Deadline**

As set forth above, Appellant has missed several deadlines in this case. Most recently, after Appellant's appeal languished for six months and was put on the calendar for dismissal for failure to prosecute, he was granted seven days to file his opening brief; he did so on the eighth day. Appellee asks the Court to dismiss the appeal on this basis. Because the Court rejects Appellant's arguments on the merits, it need not consider this argument.

/ / / /

/ / / /

**CONCLUSION**

For the foregoing reasons, the Court finds that the bankruptcy court did not err in its findings of fact or conclusions of law, and AFFIRMS the bankruptcy court's order converting this case to Chapter 7.


IT IS SO ORDERED.

Dated:   September 5, 2013        _____

                                 SENIOR  DISTRICT  JUDGE